**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID A. ZUBIK, BISHOP OF PITTSBURGH, AS TRUSTEE, ROMAN CATHOLIC DIOCESE OF PITTSBURGH, A PENNSYLVANIA CHARITABLE TRUST and SAINT MARY OF THE MOUNT PARISH, A PENNSYLVANIA CHARITABLE TRUST | C.A. NO. 2:20-cv-1809 |
| Plaintiffs | |
| v. | |
| CITY OF PITTSBURGH and SARAH QUINN | |
| Defendants | |

## VERIFIED COMPLAINT

Plaintiffs, the Most Reverend David A. Zubik, Bishop of Pittsburgh ("Bishop Zubik"), the Roman Catholic Diocese of Pittsburgh (the "Diocese") and the Saint Mary of the Mount parish (the "Parish"), by and through their undersigned counsel, file the within Complaint against Defendants, City of Pittsburgh (the "City") and Sarah Quinn, in her professional and personal capacities, and state as follows:

### INTRODUCTION

1.      This is an emergency action for injunctive, declaratory, compensatory, and all other relief that the Court deems appropriate under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.* (the "RLUIPA"), United States' civil rights law 42 U.S.C. § 1983, the First, Fifth, and Fourteenth Amendments to the Constitution of the United States, Article 1, Section 3 of the Constitution of the Commonwealth of Pennsylvania, the laws of the Commonwealth of Pennsylvania

including 53 Pa. Cons. Stat. § 2962 and 10 P.S. § 81, as well as the City of Pittsburgh Historic Designation Ordinance, City of Pittsburgh, Pennsylvania Code of Ordinances § 1101.03.

2.     The City of Pittsburgh is currently considering designating the St. John Vianney Church Building (the "Church Building") located at 225 Allen Street, Pittsburgh, Pennsylvania 15210 as a historic structure based upon a recommendation by the Historic Review Commission pursuant to the City of Pittsburgh Historic Designation Ordinance.

3.     This consideration is premature as the Church Building is not fully and finally closed for religious worship pursuant to Roman Catholic Church Canon Law and doctrines.

4.     The Diocese will suffer irreparable harm without relief, the balance of harms favors the Diocese, and relief is in the public interest.

## THE PARTIES

5.     Plaintiff the Most Reverend David A. Zubik, Bishop of Pittsburgh, is a resident of Pittsburgh Pennsylvania and serves as Trustee of the property at issue in this action.

6.     Plaintiff Roman Catholic Diocese of Pittsburgh is a Pennsylvania charitable trust whose trustee is the Most Reverend David A. Zubik, Bishop of Pittsburgh, and which operates as the legal entity through which the Diocese furthers its religious mission in six southwestern counties of Pennsylvania (Allegheny, Beaver, Butler, Greene, Lawrence, and Washington).

7.     Plaintiff Saint Mary of the Mount Parish is a Pennsylvania Charitable Trust, separate from the Diocese whose Trustee is the Most Reverend David A. Zubik, who in his

ecclesiastical role as Bishop of Pittsburgh serves as Trustee of the trust and Owner of Parish real estate.

8.   The central office of the Diocese is located at 111 Boulevard of the Allies, Pittsburgh, Pennsylvania 15222.

9.   The Roman Catholic Diocese of Pittsburgh is part of the Roman Catholic Church which is subject to internal laws (Canon Law), procedures, and doctrines.

10.   Defendant City of Pittsburgh is a Municipality located in Allegheny County, Pennsylvania.

11.   Defendant Sarah Quinn is a Preservation Planner for the Historic Review Commission and an employee of the City of Pittsburgh.

### VENUE AND JURISDICTION

12.   This Court has jurisdiction over all federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as the claims arise under the Constitution and laws of the United States and seek redress for the deprivation, under the color of State law, of rights and privilege.

13.   This Court has supplemental jurisdiction over the all State law claims arising under the Constitution and laws of the Commonwealth of Pennsylvania under 28 U.S.C. § 1367(a) as such claims are part of the same case or controversy giving rise to the claims over which this court has original jurisdiction.

14.   This Court has jurisdiction over the requested declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

15.   The Court has personal jurisdiction over Defendant City of Pittsburgh because it is incorporated in the Commonwealth of Pennsylvania.

16.     The Court has personal jurisdiction over Defendant Sarah Quinn because she is a resident in and employee of the City of Pittsburgh, Pennsylvania.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as Defendant City of Pittsburgh is incorporated within the Western District of Pennsylvania, Defendant Sarah Quinn is a resident in and employee of the City of Pittsburgh, a substantial part of the events or omissions giving rise to the action occurred within this district, and the property that is the subject of this action is situated within the district.

### ALLEGATIONS

18.     The Church Building, which was consecrated as Saint George, has been continuously owned by the Successive Bishops of Pittsburgh as Trustee pursuant to canon law as recognized by 10 PS § 81 since the 1800s.

19.     The Church Building is still owned by the Bishop of Pittsburgh in his role as Trustee, and as the result of legitimate canonical processes, as Trustee for the Saint Mary of the Mount Parish.

20.     Bishop Zubik issued a Canonical Decree on January 23, 2016, which, *inter alia*, closed the Church Building for worship subject to appeal within the Roman Catholic Church.

21.     Parishioners appealed this decree within the Church subject to the Roman Catholic Church's Canon Law and procedures.

22.     This appeal, upon consideration by the Congregation of the Clergy, a judicial entity within the Roman Catholic Church, was accepted thereby nullifying the Canonical Decree issued on January 23, 2016.

23.     On June 16, 2017, Bishop Zubik issued a new Canonical Decree noting that due to the significant repairs necessary to make the Church Building safe for use and suitable for divine worship, the lack of available and viable funds to pay for such necessary repairs, and the proximity of the nearby parish, Saint Mary of the Mount, the Church Building would be closed for worship.

24.     The Canonical Decree issued on June 16, 2017 also transferred control and ownership of the property to the Parish pursuant to Canon Law and procedures.

25.     Parishioners were given the right to appeal the Canonical Decree of June 16, 2017 within the Church subject to the Roman Catholic Church's Canon Law.

26.     Parishioners have so appealed the Canonical Decree of June 16, 2017 within the Church.

27.     The canonical appeal is currently pending before the Supreme Tribunal of the Apostolic Signatura of the Holy See, located at the Vatican, and no final decision has been made pursuant to the Roman Catholic Church's Canon Law.

28.     As such, the Church Building is not fully and finally closed for religious worship pursuant to the Roman Catholic Church's Canon Law and Doctrines.

29.     The United States recognizes "[t]he Holy See [as] the universal government of the Catholic Church [which] operates from Vatican City State, a sovereign, independent territory. ... The Holy See, as the supreme body of government of the Catholic Church, is a sovereign juridical entity under international law." U.S. Department of State, *U.S. Relations With the Holy See*, Published August 27, 2020; available at: https://www.state.gov/u-s-relations-with-the-holy-see/#:~:text=The%20Holy%20See%2C%20as%20the,juridical%20entity%20under%20i

nternational%20law.&text=From%201870%20to%201984%2C%20the,relations%20with%20the%20Holy%20See.

30.     The canonical appeal is pending before a legitimate and recognized judicial body and the rule of comity applies.

31.     Despite this pending appeal within the Roman Catholic Church as to the exercise of religious worship and property, a private individual, Mark Wittman, nominated the Church Building for historic designation to the City of Pittsburgh on or about April 13, 2020.

32.     The City of Pittsburgh's Historic Review Commission ("HRC") accepted this nomination for consideration despite Mark Wittman not being the owner of record of the historical structure.

33.     On or about June 25, 2020, Bishop Zubik and the Diocese, through their agent, notified via email the HRC and the City generally, by and through its agents Yvonne Hilton, City Solicitor, and Defendant Sarah Quinn, that the Church Building was not canonically closed for religious worship and that the owners of the Church Building, Bishop Zubik, the Diocese, and/or the Parish did not submit the nomination to be designated as a historic structure and that it, in fact, opposes such designation.

34.     Moreover, the email noted that the Church Building was not eligible for historic designation pursuant to the City of Pittsburgh Historic Designation Ordinance (the "Ordinance"), City of Pittsburgh, Pennsylvania Code of Ordinances § 1101.03, the ordinance under which the nomination was made.

35.     The Ordinance states that the "[n]omination of a religious structure shall only be made by the owner(s) of record of the religious structure." *Id.* at (a)(1)(a)(7).

36.     The Ordinance states that a religious structure is "[a]ny or all of the following: church, cathedral, mosque, temple, rectory, convent, or similar structure used as a place of worship." Pennsylvania Code of Ordinances § 1101.02(h).

37.     Because the Church Building is not canonically closed it is still, and certainly was, used as a place of worship.

38.     Moreover, if any ambiguity as to the purpose of the Ordinance remained, then Councilman and later Mayor Robert O'Connor, in responding to a question about the breadth of the Ordinance, stated the City of Pittsburgh's legislative intent:

> All you would have to do whether you, me or anyone would just go to the parish council, the Bishop or the pastor and say this building has been sitting here six years empty. Nobody is using it. Why don't we make it historic and the parish council might say that's a great idea. Let's take it to the Bishop and they may do that. … if someone wants to make it historic, they would just go to the owner of the church or synagogue… All they are saying is if someone wants to make the church parking lot historic, then just go to the parish council, go to the pastor and they can start the ball rolling.

Hearing Committee Minutes, City Council.

39.     Both the express language and legislative intent evidence that decisions as to the designation of a religious structure should be left to the owner of said structure.

40.     Moreover, this interpretation better comports with both the United States and Pennsylvania Constitutions which leave purely religious decisions and disputes to be decided, rightfully, by the religious institution. *See* U.S. Const. amend. I *and* Pa. Const. art. 1, § 3.

41.     This broader understanding of the Ordinance is also necessary pursuant to the Pennsylvania Statutory Construction Act which states that in determining legislative intent, it should be presumed that the legislative body "does not intend to violate the

Constitution of the United States or of this Commonwealth." 1 Pa. Stat and Cons Stat. Ann. § 1922.

42.     Additionally, municipalities are prohibited from "exercising powers contrary to or in limitation or enlargement of powers granted by statutes which are applicable in every part of this Commonwealth." 53 Pa. Cons. Stat. § 2962.

43.     One such statute applicable in every part of the Commonwealth, 10 P.S. § 81, provides that property owned by a religious organization and used for, *inter alia*, religious worship, is to have decisions regarding control and disposition vested in the Bishop "in accordance with and subject to the rules and regulations, usages, canons, discipline and requirements of the religious body, denomination or organization to which such church, congregation, or religious society shall belong."

44.     Because the effect of a historic designation requires that a landmark be preserved in its current state in perpetuity and subjects decisions for any and all alterations of the structure to state authority, the rights of Bishop Zubik, the Diocese, and the Parish, to control and dispose of Church property is abrogated by the Ordinance.

45.     The Ordinance, as applied here, not only infringes upon the religious liberties of Bishop Zubik, the Diocese, and the Parish but is also in conflict with a law of the Commonwealth of Pennsylvania.

46.     As such, the City of Pittsburgh is prohibited from "exercising powers contrary to or in limitation or enlargement of powers granted by" 10 P.S. § 81 and the Constitutions of the United States and Pennsylvania.

47.     Moreover, designating a religious structure as a historic structure is not made to protect the lives, health, and/or safety of residents.

48.     Such designation is not, therefore, made in the public interest in any way that justifies the abrogation of Bishop Zubik's, the Diocese's, and the Parish's religious liberties.

49.     On or about September 2, 2020, and after having been made aware of these substantial issues with designating the Church Building as a historic structure, Defendant Sarah Quinn and the HRC recommended to the City Council to approve the recommendation.

50.     Defendant Sarah Quinn was actively and continuously involved in the process of designating the Church Building as a historic structure.

51.     Defendant Sarah Quinn had knowledge, as a direct result of the June 25, 2020 email sent to her on behalf of the owner of the Church Building, of the absence of the religious structure's nomination and/or consent and, in fact, was aware of the owner's opposition to the Church Building's nomination and designation as a historic structure.

52.     Defendant Sarah Quinn had knowledge, as a direct result of the June 25, 2020 email sent to her on behalf of the owner of the Church Building, that the Church Building was not canonically closed for worship and was therefore, pursuant to the terms of the City of Pittsburgh Historic Designation Ordinance, ineligible for historic designation without the nomination by or consent of the owner.

53.     Defendant Sarah Quinn, in her professional and personal capacity, acted under the color of state law in proceeding with the historic structure designation process when she knowingly and continuously ignored the expressed intent of the Church Building's owner.

54.     The City of Pittsburgh provided notice to the Diocese of a public hearing, scheduled for November 10, 2020, on designating the Church Building as a historic structure on or about October 30, 2020.

55.     Having notified, *inter alia*, the City Solicitor on or about June 25, 2020 and again on or about September 1, 2020, the Diocese alerted the City Council of the pending Canonical appeal and the myriad issues with designating the Church Building as a historic structure on or about November 9, 2020.

56.     Despite this, the City Council proceeded to hold the hearing on November 10, 2020 as to designating the Church Building as a historic structure and moved forward with, based on information and belief, the review and approval of the designation by a Committee of the City Council.

57.     Based on information and belief, the final vote to designate the Church Building as a historic structure is to be held on Monday, November 23, 2020 at or around 10:00 AM.

58.     The City Council has indicated that it will approve the designation at that time thereby irreparably interfering with the religious practices and Canonical laws and procedures of the Diocese, the Parish, and the Roman Catholic Church.

59.     The imposition of restrictions attendant to the historical designation of the Church Building will not only infringe upon the religious liberties of Bishop Zubik, the Diocese, and the Parish, it will adversely impose additional difficulties in the disposition and control of the Church Building in clear violation of the Constitutions of the United States and Pennsylvania, the laws of the Commonwealth of Pennsylvania, and the Ordinances of the City of Pittsburgh.

60.     The very acceptance of the nomination by the nominator, Mark Wittman, a private individual was a violation of the exemption in the City of Pittsburgh Historic Designation Ordinance.

61.     The HRC lacked jurisdiction to consider the nomination, rendering its consideration and subsequent recommendation null and void.

62.     Transmission of the nomination and recommendation to the Pittsburgh City Council was improper.

63.     The nomination was not made by the owner of the Church Building, in violation of the law, and further, was objected to by said owner, removing all authority, if any ever existed, of the City to consider the nomination under its authority pursuant to the Home Rule Charter of the City of Pittsburgh and the Optional Plans Law.

64.     As such, all actions, since at least the Bishop's objection, are ultra vires as they violate the Diocese's, the Parish's, and their Trustee's rights under 10 P.S. § 81.

65.     Given these facts, Bishop Zubik, the Diocese, and the Parish are likely to succeed on the merits of their claims; they are likely to suffer irreparable harm without relief; the balance of harms favors Bishop Zubik, the Diocese, and the Parish; and relief is in the public interest. *See Issa v. School District of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017)

66.     Moreover, an injunction is necessary to prevent the immediate and irreparable harm suffered by Bishop Zubik, the Diocese, and the Parish of the infringement of their religious liberties, the interference with Canonical law and processes, and the additional burdens imposed by designating the Church Building as a historic structure without its approval and/or consent.

67.     These damages cannot be adequately compensated by money damages.

68.     Refusing to grant the injunction will cause significantly greater harm than granting it, as an injunction's temporary delay designating the Church Building as a historic structure will not injure any party whereas such designation will injure the rights and religious liberties of Bishop Zubik, the Diocese, and the Parish.

69.     Issuing the injunction will preserve the status quo whereas refusing to grant the injunction will permit the wrongful and injurious conduct to proceed along the designation process as it has done repeatedly despite oft repeated warnings and notices of harm.

70.     Bishop Zubik, the Diocese, and the Parish are likely to prevail on the merits of their claims as is evidenced by the myriad reasons noted in this Complaint.

71.     The public interest will not be harmed as a historic designation is not made for the health, safety, or welfare of the residents of the City of Pittsburgh and certainly not in these interests in the immediate future.

72.     As such, under Pennsylvania law, relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; greater injury will occur from refusing to grant the injunction than from granting it; the injunction will restore the parties to their status quo as it existed before the wrongful conduct; Bishop Zubik, the Diocese, and the Parish are likely to prevail on the merits of their claims; the injunction is reasonably suited to abate the offending activity; and the public interest will not be harmed if the injunction is granted. *See Brayman Const. Corp. v. Com. Dept. of Transp.*, 13 A.3d 925, 935 (Pa. 2011).

## CLAIMS FOR RELIEF

<u>COUNT I</u>

**Violation of the Religious Land Use and Institutionalized Persons Act of 2000
by Defendant City of Pittsburgh**

73.     Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

74.     Defendant City of Pittsburgh, under the color of state law, has threatened to substantially burden Bishop Zubik, the Diocese, and the Parish of their right to freely exercise their religion by imposing a land use regulation.

75.     The threatened action is made against a religious structure without the consent of the owner in violation of the Defendant City of Pittsburgh's own ordinance. City of Pittsburgh, Pennsylvania Code of Ordinances Title § 1101.03(a)(1)(a)(7).

76.     The violative land use regulation is imposed by a formal procedure in which the government makes an individualized assessment.

77.     Bishop Zubik, the Diocese, and the Parish are likely to succeed on the merits of their claim as the land use restriction not only violates the RLUIPA, it is also made in violation of the Defendant City of Pittsburgh's own ordinances prohibiting such conduct.

78.     This determination will irreparably harm Bishop Zubik, the Diocese, and the Parish by imposing significant restrictions on the religious structure owned by Bishop Zubik, the Diocese, and the Parish.

79.     As the owner and useful occupant of the religious structure threatened by the violative land use regulation, the balance of harms weighs heavily in Bishop Zubik's, the Diocese's, and the Parish's favor.

80.     Enforcing prohibitions against government interference with Bishop Zubik's, the Diocese's, and the Parish's free exercise of religion is in the public interest.

## COUNT II

### Violation of the United States Constitution, Free Exercise of Religion and Establishment Clauses by Defendant City of Pittsburgh

81.     Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

82.     Defendant City of Pittsburgh, by considering imposing and implementing a land use regulation in the manner described above, is threatening to impose a substantial burden on the religious exercise of Bishop Zubik, the Diocese, and the Parish.

83.     Defendant City of Pittsburgh, under the color of state law, has threatened to deprive Bishop Zubik, the Diocese, and the Parish of their right to free exercise of religion in violation of the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.

84.     There is no compelling governmental interest in imposing this substantial burden on Bishop Zubik, the Diocese, and the Parish.

## COUNT II

### Violation of the Pennsylvania Constitution, Article 1, Section 3, Religious Freedom By Defendant City of Pittsburgh

85.     Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

86.     Defendant City of Pittsburgh, by considering imposing and implementing a land use regulation in the manner described above, is threatening to control and interfere with the religious exercise of Bishop Zubik, the Diocese, and the Parish.

87.     Defendant City of Pittsburgh, under the color of state law, has threatened to deprive Bishop Zubik, the Diocese, and the Parish of their right to free exercise of religion in violation of the Constitution of the Commonwealth of Pennsylvania.

## COUNT III

### Violation of the United States Constitution, Equal Protection Clause
### By Defendant City of Pittsburgh

88.     Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

89.     The threatened action is made against a religious structure without the consent of the owner in violation of the Defendant City of Pittsburgh's own ordinance. City of Pittsburgh, Pennsylvania Code of Ordinances Title § 1101.03(a)(1)(a)(7).

90.     The threatened action has continued without a meaningful chance to dispute the violative process.

91.     Defendant City of Pittsburgh, by considering imposing and implementing a land use regulation in the manner described above, is threatening to deprive Bishop Zubik, the Diocese, and the Parish of their right to equal protection of the laws by discriminating, in violation of the Fourteenth Amendment to the United States Constitution, against the Diocese and the Parish in the adoption, enforcement and application of its ordinances.

## COUNT IV

### Violation of the United States Constitution, Due Process Clause
### By Defendant City of Pittsburgh

92.     Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

93.     The threatened action is made against a religious structure without the consent of the owner in violation of the Defendant City of Pittsburgh's own ordinance. City of Pittsburgh, Pennsylvania Code of Ordinances Title § 1101.03(a)(1)(a)(7).

94.     Defendant City of Pittsburgh, by considering imposing and implementing a land use regulation in the manner described above, is threatening to deprive Bishop Zubik,

the Diocese, and the Parish of their right to due process of law, in violation of the Fourteenth Amendment to the United States Constitution, by arbitrarily applying the Defendant City of Pittsburgh's own ordinances and denying Bishop Zubik, the Diocese, and the Parish the use of their property.

**COUNT V**

**Violation of the United States Constitution, Fifth and Fourteenth Amendment
By Defendant City of Pittsburgh**

95.     Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

96.     Designating the Church Building as a historic structure by Defendant City of Pittsburgh so severely limits the uses of the Church Building such that Bishop Zubik, the Diocese, and the Parish are effectively deprived of the reasonable use and/or value of their property.

97.     Designating the Church Building as a historic structure by Defendant City of Pittsburgh imposes significant burdens on Bishop Zubik, the Diocese, and the Parish and forces Bishop Zubik, the Diocese, and the Parish alone to bear public burdens that in all fairness and justice should be borne by the public as a whole.

98.     Designating the Church Building as a historic structure is a regulatory taking of property.

99.     No compensation has been made, nor is just compensation possible, for this infringement of the religious liberties of Bishop Zubik, the Diocese, and the Parish.

100.    The Ordinance is unconstitutionally vague and fails to give the public, and here specifically Bishop Zubik, the Diocese, and the Parish, fair warning as to prohibited conduct and allows for arbitrary and discriminatory acts.

101.   The nominator, Mark Wittman, lacked standing to nominate the Church Building for designation as a historical structure.

102.   As the nominator lacked standing to nominate the Church Building, the continuation of the historical structure designation process violates the procedural due process rights of Bishop Zubik, the Diocese, and the Parish.

103.   Defendant City of Pittsburgh had, and continues to have, no jurisdiction to consider the nomination.

104.   Defendant City of Pittsburgh, knowing of these legion procedural defects, continue to consider the Church Building for designation as a historical structure in clear violation of the procedural due process rights of Bishop Zubik, the Diocese, and the Parish.

105.   Bishop Zubik, the Diocese, and the Parish were not given the opportunity to cross-examine or meaningfully dispute or halt the historical structure designation process in clear violation of the procedural due process rights of Bishop Zubik, the Diocese, and the Parish.

106.   Defendant City of Pittsburgh, by considering imposing and implementing a land use regulation in the manner described above, is threatening to deprive Bishop Zubik, the Diocese, and the Parish of their right to due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT VI

### Violation of 42 U.S.C. § 1983, Civil Rights Violation
### By Defendant Sarah Quinn

107.   Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

108.     Defendant Sarah Quinn professionally, in her capacity as a Preservation Planner for the Historic Review Commission and an employee of the City of Pittsburgh, and personally was made aware of the myriad procedural and substantive defects in the designation process of the Church Building as a historic structure.

109.     Defendant Sarah Quinn professionally, in her capacity as a Preservation Planner for the Historic Review Commission and an employee of the City of Pittsburgh, and personally was acting under color of state law and city ordinance.

110.     Defendant Sarah Quinn professionally, in her capacity as a Preservation Planner for the Historic Review Commission and an employee of the City of Pittsburgh, and personally did, knowing of the legion procedural and substantive defects in the designation process of the Church Building as a historic structure, willfully continue the process in clear violation of the religious liberties of Bishop Zubik, the Diocese, and the Parish.

111.     Defendant Sarah Quinn's intentional conduct, despite the knowing violation of the law and the rights of Bishop Zubik, the Diocese, and the Parish, was committed with disregard to the rights and privileges of Bishop Zubik, the Diocese, and the Parish.

112.     Defendant Sarah Quinn's conduct deprived Bishop Zubik, the Diocese, and the Parish of the rights, privileges, and/or immunities secured to them by the Constitutions and laws of the United States and the Commonwealth of Pennsylvania including, without limitation, their right to exercise their religion freely without interference by the government, their due process rights, their right to equal protection under the law, and their right to control and dispose of religious property.

### COUNT VII

**Violation of Pennsylvania Law**
**By Defendant City of Pittsburgh**

113.    Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

114.    Pennsylvania law prohibits municipalities from "[e]xercis[ing] powers contrary to or in limitation or enlargement of powers granted by statutes which are applicable in every part of the Commonwealth.  53 Pa. Cons. Stat. § 2962.

115.    Moreover, Pennsylvania law vests the power to control and dispose of church property in the Bishop or other appropriate religious authority.  10 P.S. § 81.

116.    The effect of a historic designation requires that a landmark be preserved in its current state in perpetuity; prohibiting, or at least severely limiting, alterations, conversions or demolition.

117.    Designating the Church Building as a historic structure will abrogate the powers to control and dispose of the property vested in the Bishop.

118.    Such designation is not rationally related to the health, safety or welfare of the residents of the City of Pittsburgh and as such, the City of Pittsburgh through its agencies, boards and commissions and City Council lack the authority under the Home Rule Charter and Optional Plans Law to take actions which violate the Bishop's statutory rights under 10 P.S. § 81.

## COUNT VIII

**Violation of City Ordinance**
**By Defendant City of Pittsburgh**

119.    Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

120.    The City of Pittsburgh Historic Designation Ordinance requires that the "[n]omination of a religious structure shall only be made by the owner(s) of record of the religious structure."    City of Pittsburgh, Pennsylvania Code of Ordinances § 1101.03(a)(1)(a)(7).

121.    A "religious structure" is defined by the Ordinance as "[a]ny or all of the following: church, cathedral, mosque, temple, rectory, convent, or similar structure used as place of religious worship."  City of Pittsburgh, Pennsylvania Code of Ordinances § 1101.02(h).

122.    The Church Building is currently, and was previously, used as a place of religious worship.

123.    The Bishop Zubik as trustee of the Church Building owned by the Diocese and the Parish, did not nominate the Church Building for consideration to be designated a historic structure.

124.    In fact, Bishop Zubik has expressly and repeatedly emphasized his opposition to the designation of the Church Building as a historic structure.

125.    The actions of the City of Pittsburgh and the imminent vote by the City Council are in clear violation of the City of Pittsburgh Historic Designation Ordinance.

## COUNT IX

### Declaratory Judgment
### Against Defendant City of Pittsburgh

126.    Bishop Zubik, the Diocese, and the Parish incorporate by reference the allegations in the paragraphs above as though fully set forth herein.

127.    This is an action for, *inter alia*, declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

128.    There is a controversy involving the rights of Bishop Zubik, the Diocese, and the Parish.

129.    Bishop Zubik, the Diocese, and the Parish are claiming rights and legal interest in the St. John Vianney Church Building that is currently being considered by Defendant City of Pittsburgh for historic designation.

130.    The controversy is between parties with real and adverse interest and the issue is ripe for judicial declaration.

131.    Bishop Zubik, the Diocese, and the Parish seek a declaration that the Church Building may not be designated a historic structure without the consent of Bishop Zubik, the Diocese, and/or the Parish; that the consideration process is impermissible at this time, and that any designation, notice, or other finding by Defendant City of Pittsburgh is unlawful.

## **PRAYER FOR RELIEF**

WHEREFORE, the Most Reverend David A. Zubik, Bishop of Pittsburgh, the Roman Catholic Diocese of Pittsburgh and the Saint Mary of the Mount parish respectfully request that this Court grant the following relief:

A.    A temporary and permanent injunction barring the City of Pittsburgh, its officers, agents, employees, and attorneys from issuing, enforcing, or endeavoring to enforce the designation of the St. John Vianney Church Building as a historic structure;

B.    A declaration that the St. John Vianney Church Building is a religious structure and that the efforts to designate it as a historic structure are void, invalid, and unconstitutional as violating the Free Exercise protections of the Constitutions of the United States and the Commonwealth of Pennsylvania, the right to Equal Protection and

Due Process of the law as protected by the United States, and the Religious Land Use and Institutionalized Persons Act of 2000;

      C.      An award of compensatory damages;

      D.      An award of Bishop Zubik's, the Diocese of Pittsburgh's and the Saint Mary of the Mount parish's attorneys' fees, and other fees and costs, incurred in having to bring this litigation; and

      E.      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

CLARK HILL PLC

Dated: November 20, 2020

By:  */s/ Sebastian M. Fischer*
Allen M. Lopus
Pa. I.D. No. 76544
Sebastian M. Fischer
Pa. I.D. No. 327758

Firm ID. No. 282
301 Grant St., 14th Floor
Pittsburgh, PA 15219
Telephone:  (412) 394-2447

*Counsel for David A. Zubik, Bishop of Pittsburgh, As Trustee, Roman Catholic Diocese of Pittsburgh, A Pennsylvania Charitable Trust and Saint Mary of the Mount Parish, A Pennsylvania Charitable Trust*

- 22 -

## **VERIFICATION**

I, Thomas W. Kunz, a duly authorized representative of the Roman Catholic Diocese of Pittsburgh and Saint Mary of the Mount parish, have read the foregoing Verified Complaint.  The statements of fact contained therein are true and correct to the best of my personal knowledge, information, and belief.

This statement and verification are made subject to the penalties of 18 U.S.C. § 1621 relating to perjury generally which provides that if I make knowingly false averments, I may be subject to criminal penalties.

Date: November 20 , 2020

Printed Name: Thomas W. Kunz
Title: Associate General Secretary and Vicar
for Canonical Services